No. 27,177.

WILL BLAKELY, *Appellee,* v. THE ROANOKE STATE BANK, *Appellant.*

SYLLABUS BY THE COURT.

1. MALICIOUS PROSECUTION—*Pleading—Issues, Proof and Variance.* In an action for malicious prosecution brought against two defendants who were charged with .conspiracy, the verdict being against one only, the evidence justifying that result is held not to amount to a fatal variance.

2. SAME—*Want of Probable Cause—Belief in Guilt of Accused—Evidence.* In an action for malicious prosecution the evidence is held to justify a finding that the complaining witness in the criminal case acted in bad faith and from malicious motives and did not believe the accused guilty, and therefore to sustain a judgment against him.

3. SAME—*Verdict Not Excessive.* The verdict for the plaintiff in an action for malicious prosecution is held not to have been so large as to warrant interference by this court.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed February 12, 1927. Affirmed.

*Edwin S. McAnany, Maurice L. Alden* and *Thomas M. Van Cleave,* all of Kansas City, for the appellant.
*E. E. Martin* and *H. E. Dean,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: On September 2, 1924, a check for $50 was presented to the teller of the Roanoke State Bank, of Kansas City, Kan., and accepted by him, $35 being paid out in cash and an account being opened for the balance, a signature card being signed. It proved to be a forgery. The teller on October 14 following pointed out Will Blakely as the person who gave him the check and caused a warrant to be issued for his arrest. The teller went to the jail the next day and saw Blakely, affirming his identification. About a week later a preliminary examination was had and the teller as a witness said he was not positive Blakely was the right man, and he was released on bond, the hearing being continued to October 29. After a further continuance to November 6 the case was dismissed, the plaintiff's innocence having been established. Blakely brought an action against the bank for malicious prosecution and recovered a judgment for $1,866, from which the defendant appeals.

Malicious Prosecution, 38 C. J. pp. 421 n. 72, 422 n. 85, 423 n. 90, 447 n. 42. 451 n. 84, 474 n. 72, 478 n. 16, 479 n. 17, 500 n. 82; 18 R. C. L. 37.

1. A contention is made that the plaintiff's evidence did not conform to his pleading. The action was brought against the bank and a detective agency. The petition alleged that they conspired to bring about the prosecution of the plaintiff; that a representative of the detective agency pointed him out as the offender. The evidence was that the detective directed the teller's attention to a group of men who were at work for the park board and the teller undertook to identify the present plaintiff as the man who gave him the check. The verdict was in favor of the detective agency. This was not such a variance as to warrant setting aside the verdict against the bank. No prejudice to the bank appears. The conspiracy charged was not essential to the cause of action against it. The plaintiff proved less against the detective agency and more against the bank than he had alleged, but this was a matter of detail by which there is no reason to suppose the bank was seriously misled.

2. The bank contends there was no evidence to support the verdict or the following special findings made by the jury:

"Did R. D. Watts [the teller], at the time he signed the complaint against Blakely, bear any actual malice against him? Yes.

"If you answer the foregoing question 'yes,' state what Watts did that indicated malice against the plaintiff? He testified to that effect. Did not use diligence in ascertaining his identity. Showed a willful disregard of his rights as a citizen.

"When Watts signed the complaint, did he honestly believe that Blakely was the man who appeared on September 2 and presented and got cash on the forged check? No.

"When Watts saw Blakely in the county jail, did he then honestly believe that Blakely was the man who appeared at the bank and presented the check? No."

In the first of the quoted findings the jury said the defendant bore "actual malice" against the plaintiff, a term which was not defined or used in the instructions. Whether it was accurately used in the finding is not material, for the following three answers showed a state of mind, whatever it might be called, such as to justify a verdict against the defendant, and the vital question is whether there was evidence supporting these findings. There is authority, however, for calling such a state of mind actual malice (38 C. J. 421), although what is called legal malice has been held sufficient where punitive damages are not sought. (38 C. J. 422, 478-479.) We think the evidence supported a finding of the kind of malice necessary to sustain the judgment for the plaintiff. It is

not essential to the existence of such malice that the teller should have had any personal ill will toward the plaintiff. It is enough that he did not believe the plaintiff guilty and proceeded upon an improper motive. (*Foltz v. Buck*, 89 Kan. 381, 131 Pac. 587; 38 C. J. 422-423; 18 R. C. L. 28-30.) The state of the teller's mind in this regard necessarily had to be determined by inferences to be drawn from the circumstances presented, a matter in which his own bearing on the stand may be of controlling influence. The jury were not bound to accept his own testimony on the subject. A possible motive for his making the charge without believing the plaintiff guilty may be found in the hypothesis that he desired at least to appear to make amends for having been imposed upon by the forgery, by getting credit for discovering the perpetrator of the fraud. He undertook positively to identify the plaintiff as the man who gave him the check and caused his arrest, without investigation beyond looking at him—without, for instance, undertaking to see how his writing compared with that on the signature card or the back of the check, without hearing his voice so that he might see if it resembled that of the impostor, and without an inquiry as to the plaintiff's whereabouts on the day the crime was committed. All this gives room for the inference that he was acting as the jury found, in willful disregard of the plaintiff's rights.

3. Complaint is also made of the amount of the verdict, particularly of the item of $1,700 awarded for mental anguish. In the case of persons of ordinary sensibility and of reasonably good standing in the community the humiliation of being unjustly arrested and held in jail is naturally and properly a basis for a very considerable allowance of damages. It is true the plaintiff while on the stand failed to rise to the opportunity afforded to stress this feature of the injury done him. He returned a negative answer to his counsel's question whether there was any feeling of shame on his part by reason of having been imprisoned and undergoing a trial. It was, however, for the jury to determine how far this reply was due to insensibility and how far to his failure to grasp fully the force of the question. He had already given this testimony:

"My health was good when I was arrested. I felt awful sick; awful sick whilst I was in there (jail). I was in jail for the first time, you see. I was feeling all right when I first got in there, but after I stayed in there that night and I thought of seeing my children, you know, again, it was beginning to take effect on my heart, you know, and bothered me; I just could not rest."

Whether the reference to his heart was meant literally or figuratively the jury may reasonably have believed a man who volunteered the remark, "I was in jail for the first time, you see," was not wholly unconscious of the disgrace that ordinarily attaches to arrest and imprisonment.

We think the amount awarded was not so excessive as to justify interference by this court.

The judgment is affirmed.